UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HOLDING CAPITAL GROUP, INC.<br>Plaintiff,<br><br>v.<br><br>COMPUREX SYSTEMS CORPORATION,<br>MARK OSTROFF and<br>CHRISTOPHER E. PERNOCK<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

04cv12061 MEL

MAGISTRATE JUDGE Bowler

# COMPLAINT

## INTRODUCTION

This is an action for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Quantum Meruit, Misrepresentation, Breach of Fiduciary Duty and Violation of M.G.L. Ch. 93A, against Compurex Systems Corporation, Mark Ostroff and Christopher E. Pernock.

## PARTIES

1.   The Plaintiff, Holding Capital Group, Inc. ("HCG"), is a duly organized Connecticut corporation with principal offices at 7 Ridgewood Drive, Bridgewater, CT 06752.

2.   The Defendant, Compurex Systems Corporation ("Compurex"), is a Massachusetts corporation with principal offices at 35 Eastman Street, Easton, Massachusetts 02334.

{00058638.DOC}

3. The Defendant, Mark Ostroff ("Ostroff"), is a natural person who, upon information and belief, has a last and usual address of 18 Kings Road, Sharon, Massachusetts 02067.

4. The Defendant, Christopher E. Pernock ("Pernock"), is a natural person who, upon information and belief, has a last and usual address of 392 Park Street, Stoughton, Massachusetts 02072.

## JURISDICTION

5. This Court has diversity jurisdiction pursuant to 28 USC §1332. The amount in controversy exceeds $75,000.00. Venue is properly laid in this Court

## FACTS

6. HCG is a private equity investment and international money management firm.

7. Compurex is a reseller of computer hardware equipment.

8. Ostroff is a director, the President and a shareholder of Compurex.

9. Pernock is a director, the Treasurer and Clerk and a shareholder of Compurex.

10. In early 2002, HCG learned that Compurex was entertaining offers for an acquisition or other means of capital investment. During 2002 and early 2003, Ostroff, Pernock and Compurex (collectively, the "Defendants") and HCG negotiated the terms of a potential transaction between them that did not take place.

11. At the end of 2003, HCG learned that Compurex was again entertaining offers for an acquisition or other means of capital investment, and the two sides again began negotiating the terms of a potential transaction.

12. On March 4, 2004, HCG and all three of the Defendants signed a binding letter of intent (the "LOI"), under which Ostroff and Pernock, both as officers of Compurex and individually, and HCG were to establish a new entity ("Newco") that would acquire the assets and operating liabilities of Compurex and would operate its business. Ostroff and Pernock would retain a majority interest in the business by obtaining a majority interest in Newco. By means of its investment in Newco (consisting of both cash contributed by HCG and loans to Newco arranged by HCG), HCG would benefit by the presumed increase in the value of its share of Newco resulting from the increasing value of its equity over time. Ostroff and Pernock would each sign five-year employment agreements with Newco. In addition to receiving a closing fee and being reimbursed for its expenses incurred to effectuate the transaction, HCG would be paid an on-going monthly consulting fee by Newco.

13. The LOI contained all of the material terms of the transaction. The only additional information HCG needed related to documentation and financing, and was to be provided by Compurex, Ostroff, Pernock and their representatives.

14. The LOI provided that HCG would arrange for financing of the transaction and would then prepare the legal documentation to close the transaction. Both sides agreed to use their best efforts in good faith to close the transaction within a commercially reasonable time frame.

15. Relying upon the agreement by the Defendants in the LOI, HCG performed its requirements under the LOI by, among other things, arranging for financing through institutional lenders, resulting in an extensive expenditure by HCG of its time,

manpower and resources. Further, HCG lost the opportunity to pursue other lucrative business opportunities in relying upon the agreement by the Defendant in the LOI.

16. The LOI called for a closing of the transaction by mid-July, which for funding purposes would require the lenders to rely on Compurex's operating results through May 2004. When Compurex's May 2004 operating results were compiled by the Defendants in early June, HCG learned that such results were not as strong as the Defendants had projected. HCG and the Defendants then agreed to extend the closing date until mid-August, in order to include Compurex's June 2004 operating results. Compurex's June 2004 operating results (which were available in early July) were stronger and allowed Compurex to proceed with the transaction as structured.

17. Once HCG had performed all of its tasks under the LOI, and it was time for final documents to be prepared in order to close the transaction, the Defendants breached their agreement to use good faith to close the transaction by ceasing to communicate any useful information repeatedly requested by HCG in order to prepare documents.

18. By the beginning of August, after avoiding any substantive response to HCG's many requests for over a month, the Defendants had their representative tell HCG that they no longer wanted to go forward with the transaction, and they broke off all discussions. The mid-August deadline passed and the transaction did not close.

19. The Defendants' failure to comply with their obligations pursuant to the LOI has resulted in significant damages to HCG (including out-of-pocket expenses and expenditures of its time, manpower and resources, as well as lost business opportunities and loss of profits from the investment).

20. HCG's equity investment in Newco was to be approximately $360,000. Based on financial figures provided by the Defendants, such investment was projected to be worth (by five years after the closing) between $1,600,000 (assuming no growth in Compurex's financial performance) and $2,700,000 (assuming the conservative growth projections provided by the Defendants). Thus, HCG's loss of investment, over just the first five years, as a result of the Defendants breach was at least between $1,240,000 and $2,340,000.

### COUNT I – BREACH OF CONTRACT
### AGAINST COMPUREX AND OSTROFF AND PERNOCK, INDIVIDUALLY

21. HCG realleges and incorporates by reference paragraphs 1 through 20 above as if set forth fully herein.

22. HCG performed its obligations under the LOI. The Defendants, in bad faith, despite repeated demands from HCG, failed and neglected to provide required information and to negotiate the closing documents and breached their agreement to close the transaction outlined in the LOI, and as a result, HCG has been damaged thereby.

### COUNT II – BREACH OF IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING AGAINST
### COMPUREX AND OSTROFF AND PERNOCK, INDIVIDUALLY

23. HCG realleges and incorporates by reference paragraphs 1 through 22 above as if set forth fully herein.

24. Actions of the Defendants throughout the pendency of the LOI constitute an ongoing breach of the covenant of good faith and fair dealings that was implicit in the relationship between HCG and Defendants.

25. Pursuant to the implied covenant of good faith and fair dealing the Defendants promised to deal fairly, cooperatively and in good faith with HCG in their

performance of the LOI and to refrain from any act that would destroy or injure the right of HCG to receive the fruits of the LOI.

26. HCG believed and relied upon the Defendants' implied covenants and performed its obligations under the LOI. The Defendants, however, continually breached the implied covenant of good faith and fair dealing.

27. As a result of the action of the Defendants, which were reckless and intentional, HCG suffered money damages, including the value of the lost business opportunities.

## COUNT III – QUANTUM MERUIT AGAINST
## COMPUREX AND OSTROFF AND PERNOK, INDIVIDUALLY

28. HCG realleges and incorporates by reference paragraphs 1 through 27 above as if set forth fully herein.

29. In performing its obligations under the LOI, HCG incurred out-of-pocket expenses and made extensive expenditures of its time, manpower and resources, as well as losing other business opportunities.

30. As a result of the Defendants' actions, HCG has not been reimbursed for any of its expenses, as called for in the LOI, or for the value of its services and lost business opportunities.

## COUNT IV – MISREPRESENATION AGAINST
## COMPUREX AND OSTROFF AND PERNOK, INDIVIDUALLY

31. HCG realleges and incorporates by reference paragraphs 1 through 30 above as if set forth fully herein.

32. Each of the Defendants intentionally misrepresented to HCG their intentions to comply with the terms of the LOI and to use their best efforts in good faith to close the transaction.

33. The Defendants made such misrepresentation intending that HCG rely upon the misrepresentation to its detriment, and HCG did in fact rely upon such misrepresentation to its detriment.

34. HCG has been damaged as a result of the Defendants misrepresentations.

## COUNT V – BREACH OF FIDUCIARY DUTY AGAINST COMPUREX AND OSTROFF AND PERNOK, INDIVIDUALLY

35. HCG realleges and incorporates by reference paragraphs 1 through 34 above as if set forth fully herein.

36. The Defendants required and sought substantial investment by HCG and sought financial advice from HCG. They ultimately executed the LOI. In so doing, the Defendants placed themselves in a position of being partners or joint venturers with HCG in the development of the computer hardware equipment sales market.

37. As such, the Defendants owed to HCG the utmost duty of good faith, fair dealing, and loyalty.

38. The Defendants, in their actions, breached their fiduciary duty and, instead, acted out of avarice, expediency or self-interest in derogation of their duty of loyalty.

39. As a result of the Defendants' breach of fiduciary duty, HCG has suffered damages.

## COUNT VI – VIOLATION OF M.G.L. CH. 93A
### AGAINST COMPUREX

40. HCG realleges and incorporates by reference paragraphs 1 through 39 above as if set forth fully herein.

41. HCG and Compurex are engaged in trade or commerce as that term is defined in M.G.L. Ch. 93A.

42. Compurex's acts and practices in its relationship with HCG constitute unfair and/or deceptive acts or practices.

43. Compurex performed those unfair and/or deceptive acts or practices willfully and knowingly.

44. As a direct result of HCG's unfair and/or deceptive acts and practices, HCG has suffered damages.

**WHEREFORE**, HCG respectfully requests that this Court (i) enter judgment against the Defendants, and award HCG its damages, in an amount to be determined at trial, trebled, plus interest, costs and attorneys' fees, and (ii) grant such other and further relief as this Court deems meet and just.

Respectfully submitted,
HOLDING CAPITAL GROUP, INC.

By its attorneys,

Paul Michienzie, Esq. - BBO #548701
David P. Russman, Esq. - BBO #567796
Michienzie & Sawin LLC
745 Boylston Street, 5th Floor
Boston, MA  02116
Tel. 617-227-5660

Dated: 9/24/04